IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

F I L E D
OCT - 4 2012
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., ) | |
| a Virginia Corporation ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 3:12CV703 |
| ) | |
| COMPASS MORTGAGE, INC., ) | |
| an Illinois Corporation, ) | |
| c/o David Winthers, Registered Agent, ) | |
| 1N141 County Farm Road, Suite 230 ) | |
| Winfield, IL 60190 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, states the following for its Complaint against Compass Mortgage, Inc., doing business as Compmort Mortgage ("Compass"):

### PARTIES

1. SunTrust is a Virginia corporation with its principal place of business located in Richmond, Virginia.

2. Compass is an Illinois corporation with its principal place of business located in Wheaton, Illinois.

### JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. § 1332(a) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Jurisdiction and venue are proper in this Court because the parties entered into a Correspondent Loan Purchase Agreement, dated June 5, 2006 (the "Agreement"), that contains a forum selection clause recognizing, for the purpose of any action to enforce the Agreement, that Compass submits to personal jurisdiction in the Commonwealth of Virginia and venue in this Court. This is an action to enforce the Agreement. A copy of the Agreement is attached as Exhibit 1.

## FACTUAL BACKGROUND

### The Correspondent Loan Purchase Agreement

5. On or about June 5, 2006, SunTrust and Compass entered into the Agreement pursuant to which Compass agreed to sell to SunTrust on a servicing released basis certain residential mortgage loans (the "Loans").

6. For each mortgage loan sold by Compass to SunTrust under the Agreement, Compass represented and warranted that:

> 17.1. <u>Validity of Obligation</u>. The Mortgage Loan documents have been duly executed by the Borrower and are valid and genuine and binding obligations of the Borrower. The Note is a valid and genuine, binding and enforceable negotiable instrument and is not subject to any claim s, defenses, setoffs or counterclaim. The Mortgage is valid and genuine, binding and enforceable and creates a lien of the priority agreed upon with Purchaser on the Secured Property, subject only to (a) liens for real estate taxes not yet due and payable, (b) special assessments not yet due and payable, or (c) covenants, conditions, easements or rights-of-way acceptable to Purchaser and satisfactory (i) under Fannie Mae/Fannie Mae Requirements or investor specific requirements, if the Mortgage Loan is a Conventional Mortgage Loan, or (ii) under GNMA Requirements, if the Mortgage Loan is a FHA/VA Mortgage Loan. The Mortgage is properly recorded in the land records of the appropriate jurisdiction, and no portion of the lien has been released or subordinated.
>
> . . .

17.3 Eligibility.

17.3.1 Eligibility of Conventional Mortgage Loans. Each Conventional Mortgage Loan is in full compliance with this Agreement and the Manual including, without limitation, all underwriting and credit requirements.

. . .

17.9 Modification of Mortgage Loan Documentation. The terms of the Mortgage Loan have in no way been changed or modified . . . and the lien of the Mortgage has not been released or subordinated. All Mortgage Loan documentation submitted to Purchaser is genuine, complete and accurate, and all representations as to each Mortgage Loan are true and correct and meet the requirements and specifications of this Agreement and the Manual.

. . .

17.11 Acceptable Investment. There are no circumstances or conditions with respect to the Mortgage Loan, the Secured Property, the Borrower, or the Borrower's credit standing than can reasonably be expected to: (a) cause private institutional investors to regard the Mortgage Loan as an unacceptable investment; or (b) cause the Mortgage Loan to become Delinquent; or (c) adversely affect the Mortgage Loan's value or marketability.

7. Under the terms of the Agreement, Compass agreed to repurchase mortgage loans in certain situations:

20. Repurchase Requirements. In addition to any other rights and remedies which Purchaser may have against Seller, Seller agrees to repurchase any Mortgage Loan (of, if the Mortgage Loan has been foreclosed upon, to purchase the Secured Property if it is still held by the Purchaser) within 10 calendar days after Purchaser's demand, resulting from the occurrence [of] any of the events specified in Section 20.1.

. . .

20.1. Events Resulting in Repurchase Obligation. Seller's repurchase obligation under this Section 20 shall result from the occurrence of any of the following events with respect to a Mortgage Loan:

. . .

20.1.1. Breach of Warranty or Representation. Seller breaches any representation or warranty made pursuant to this Agreement, provided that Seller shall have 15 calendar days following notice thereof from the Lender to cure

any breach resulting from a clerical error to the satisfaction of Purchaser. Such right to cure may be exercised only one time for each Mortgage Loan sold to Purchaser under this Agreement.

. . .

20.1.3 <u>False or Misleading Statements</u>. Any information submitted by Seller or any statement, report or document furnished by Seller to Purchaser hereunder was incomplete, inaccurate, false, or misleading in any material respect when made or delivered, regardless of whether Seller had or should have had knowledge of the same at the time. This includes, without limitation, any information in any loan application submitted by any Borrower; any appraisal or evaluation report; any credit report; any title search or title insurance policy; and any condominium or PUD warranties made by Seller to Purchaser.

. . .

20.3. <u>Repurchase Price</u>. In the event Seller is obligated to repurchase a Mortgage Loan under this Section 20, the repurchase price shall be the higher of (a) the unpaid principal balance or (b) the price paid by Purchaser (but not less than par), plus all accrued interest through and including the date of repurchase, together with reimbursement to Purchaser for any expenses or court costs incurred in connection with the repurchase of any such Mortgage Loan or investigating, researching and enforcing such repurchase including, without limitation, attorney's fees or other professional fees. Purchaser shall have the right to offset the amount owed by Seller to Purchaser pursuant to this Section 20 at any time, without prior notice, against the Purchase price for any Mortgage Loan or against any and all balances, credits, deposits, accounts, or monies of Seller then or thereafter held by Purchaser.

8. Under the terms of the Agreement, Compass also agreed to indemnify SunTrust in certain situations:

22. <u>Indemnity</u>. Seller hereby agrees to indemnify, defend and hold harmless Purchaser and its successors, affiliates, and assigns, together with their respective officers, directors, employees and agents (collectively, the "Indemnitees"), from and against any and all claim, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from (a) a breach by Seller of any representation, warranty, term, condition or obligation contained in or made pursuant to the Manual, this Agreement or any other agreement between Seller and Purchaser relating to the purchase of Mortgage Loans, (b) a failure by Seller to disclose any

information that renders any such representation or warranty misleading or inaccurate, (c) any materially inaccurate, incomplete, false, or misleading information provided by or through Seller to Purchaser, (d) any misrepresentation made by or through Seller to Purchaser concerning any Mortgage Loan, or (e) Seller's ownership of or actions with respect to any Mortgage Loan. This Section 22 shall survive any purchase, sale or transfer of any Mortgage Loan or any interest therein by any of the Indemnitees, the liquidation of the Mortgage Loan, or any termination of this Agreement.

### The Akinyemi Loans

9. On or about December 4, 2007, Pipelayo G. Akinyemi ("Akinyemi") purchased the real property located at 12444 W. Anand Brook Drive, Orland Park, Illinois 60467 (the "Akinyemi Property").

10. In order to purchase the Akinyemi Property, Compass obtained two mortgage loans, in the amounts of $387,500.00 (the "First Akinyemi Loan") and $175,000.00 (the "Second Akinyemi Loan") (together, the "Akinyemi Loans"). The Akinyemi Loans were each secured by a mortgage on the Akinyemi Property.

11. On or about December 27, 2007, Compass sold the Akinyemi Loans to SunTrust.

12. On or about February 12, 2008, SunTrust sold the First Akinyemi Loan to the Federal National Mortgage Association ("Fannie Mae").

13. On or about October 19, 2011, Fannie Mae notified SunTrust of its duty to purchase the First Akinyemi Loan as a result of inaccurate, false, or misleading information contained in the application for the First Akinyemi Loan.

14. Specifically, SunTrust confirmed that Akinyemi had misrepresented her income, claiming on her Uniform Residential Loan Applications (the "Applications") for the Akinyemi Loans that she earned $11,150.00 monthly; however, Akinyemi's actual earnings were $6,710.00 monthly. Akinyemi was required to provide accurate information related to her income on the

5

Applications but failed to do so, thereby making material false representations of her financial condition to obtain the Akinyemi Loans from Compass.

15. Furthermore, in documentation completed as part of the Applications, Akinyemi represented that she would occupy the Akinyemi Property; however, on information and belief, she continued to reside in another property she owned when she purchased the Akinyemi Property.

16. These misrepresentations constituted a violation of the Agreement between SunTrust and Compass, under which Compass warranted that each loan was valid, genuine, and in full compliance with all underwriting and credit requirements and that no circumstances or conditions existed that could reasonably be expected to cause the Akinyemi Loans to be regarded as unacceptable investments.

17. On or about March 1, 2012, SunTrust repurchased the First Akinyemi Loan from Fannie Mae for $525,468.02.

18. By letters dated May 14, 2012, June 6, 2012, September 10, 2012, and September 17, 2012, in accordance with Section 20 of the Agreement, SunTrust, by counsel, requested that Compass repurchase the Akinyemi Loans from SunTrust. Compass failed to do so.

19. As of October 3, 2012, the outstanding balance on the First Akinyemi Loan, including principal and interest, was $700,106.67, and the outstanding balance on the Second Akinyemi Loan, including principal and interest, was $190,752.44. Together, the outstanding balance for the Akinyemi Loans totaled $890,859.11.

**COUNT I: BREACH OF CONTRACT (REPURCHASE OF FIRST AKINYEMI LOAN)**

20. SunTrust incorporates the allegations set forth in paragraphs 1 through 19 above as if set forth fully herein.

21. The parties' Agreement required Compass to repurchase loans within 10 calendar days of demand by SunTrust should any Event of Default, as described under the Agreement, occur.

22. Compass has breached its obligations under the Agreement by selling to SunTrust the First Akinyemi Loan, which contained inaccurate, fraudulent or misleading information or otherwise violated the representations and warranties made by Compass. Compass is obligated to purchase the First Akinyemi Loan in the amount of $700,106.67, together with repayment of any fees received from SunTrust in connection with the First Akinyemi Loan, payment of accrued interest through, and including the date of purchase, and reimbursement to SunTrust for all expenses or costs incurred in connection with investigating the First Akinyemi Loan and enforcing its repurchase, including attorney's fees.

23. Pursuant to the Agreement, SunTrust has demanded that Compass repurchase the First Akinyemi Loan, but Compass has failed to do so, thereby further violating the Agreement.

24. Because SunTrust still owns the Akinyemi Loan, the precise amount of SunTrust's damages cannot otherwise be definitely or accurately determined.

25. Therefore, SunTrust has no adequate remedy at law, and specific performance of the Agreement by Compass is appropriate.

### COUNT II: BREACH OF CONTRACT (INDEMNIFICATION OF THE FIRST AKINYEMI LOAN) (ALTERNATIVE)

26. SunTrust incorporates the allegations set forth in paragraphs 1 through 19 above as if set forth fully herein.

27. The parties' Agreement required Compass, in selling the First Akinyemi Loan to SunTrust, to represent and warrant that the First Akinyemi Loan and its related documentation were "valid and genuine," were in full compliance with all underwriting requirements, and that

there were no circumstances or conditions that would render the First Akinyemi Loan "an unacceptable investment" or "adversely affect its value or marketability."

28. SunTrust's review of the First Akinyemi Loan revealed that Compass had breached its obligations under the Agreement by selling to SunTrust a Loan that contained inaccurate, fraudulent and/or misleading information. As a result, Compass should indemnify SunTrust for its losses related to the First Akinyemi Loans under Section 22 of the Agreement.

29. Specifically, Section 22 of the Agreement requires Compass to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information"; or "any misrepresentation made by or through" Compass to SunTrust.

30. As a result of Compass' breach of the Agreement, SunTrust has been damaged in the amount of $700,106.67, plus accrued interest from the date of demand, reflecting losses incurred from the non-performance of the First Akinyemi Loan, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

31. Compass is obligated to indemnify SunTrust for its losses associated with the First Akinyemi Loan.

**COUNT III: BREACH OF CONTRACT (INDEMNIFICATION FOR THE SECOND AKINYEMI LOAN)**

32. SunTrust incorporates the allegations set forth in paragraphs 1 through 19 above as if set forth fully herein.

33. The parties' Agreement required Compass, in selling the Second Akinyemi Loan to SunTrust, to represent and warrant that the Second Akinyemi Loan and its related documentation were "valid and genuine," were in full compliance with all underwriting requirements, and that there were no circumstances or conditions that would render the Second Akinyemi Loan "an unacceptable investment" or "adversely affect its value or marketability."

34. SunTrust's review of the Second Akinyemi Loan revealed that Compass had breached its obligations under the Agreement by selling to SunTrust a Loan that contained inaccurate, fraudulent and/or misleading information. As a result, Compass should indemnify SunTrust for its losses related to the Second Akinyemi Loans under Section 22 of the Agreement.

35. Specifically, Section 22 of the Agreement requires Compass to indemnify SunTrust "from and against any and all claims, losses, damages, fines, penalties, forfeitures, attorney's fees, judgments and any costs, court costs, fees and expenses relating to, arising out of, based upon, or resulting from" a breach of presentation or warranty; a failure to disclose information rendering such presentation or warranty "misleading or inaccurate"; "materially inaccurate, incomplete, false, or misleading information"; or "any misrepresentation made by or through" Compass to SunTrust.

36. As a result of Compass' breach of the Agreement, SunTrust has been damaged in the amount of $190,752.44, plus accrued interest from the date of demand, reflecting losses incurred from the non-performance of the Second Akinyemi Loan, together with all costs and attorney's fees associated with SunTrust's enforcement of its rights under the Agreement.

37. Compass is obligated to indemnify SunTrust for its losses associated with the Second Akinyemi Loan.

WHEREFORE, SunTrust Mortgage demands judgment against Compass Mortgage, Inc. as follows:

1. As to Count I, specific performance in the form of repurchase of the First Akinyemi Loan immediately upon entry of judgment for the amount of $700,106.67, plus accrued interest and expenses, together with reimbursement of any premium paid to Compass Mortgage, Inc. and pre-judgment interest as allowed by law.

2. As to Count II, in the alternative, compensatory damages in the amount of $700,106.67, together with pre-judgment interest as allowed by law.

3. As to Court III, compensatory damages in the amount of $190,752.44, together with pre-judgment interest as allowed by law.

4. As to all Counts, reasonable attorney's fees, costs and expenses.

5. As to all Counts, post-judgment interest and all costs allowed by law.

6. For such other and further relief as is necessary and proper.

SUNTRUST MORTGAGE, INC.

By: *[signature]*
Robert D. Perrow (VSB No. 14766)
J.P. McGuire Boyd, Jr. (VSB No. 72753)
Steven P. Gould (VSB No. 80411)
Williams Mullen
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: 804.420.6000
Facsimile: 804.420.6507
Email: bperrow@williamsmullen.com
Email: mboyd@williamsmullen.com
Email: sgould@williamsmullen.com
*Counsel for Plaintiff SunTrust Mortgage, Inc.*

18766881_2